# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ROBERT G. CLARK,

        **Plaintiff,**

  v.                                                                            **Case No. 18-CV-503**

**MILWAUKEE COUNTY**, et al.,

        **Defendants.**

## ORDER

### INTRODUCTION

On March 3, 2018, Dr. Robert G. Clark filed a complaint against Milwaukee County, Milwaukee County Behavioral Health Division, and Lora Dooley, the Director of Medical Services at Behavior Health Division, alleging a due process violation, breach of contract, breach of implied contract and duty of good faith and fair dealing, negligence, and interference with business relationship and expectation. (ECF No. 1.) It sought punitive damages and declaratory and injunctive relief. (*Id.*) On June 4, 2018, defendants moved to dismiss Clark's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. (ECF No. 14.) On August 7, 2018, the court granted defendants' motion to dismiss Clark's due process claim. (ECF No. 22.) After noting that it "would ordinarily decline to exercise supplemental

jurisdiction over the remaining state law claims," at Clark's request the court allowed him fourteen days to file an amended complaint. (ECF No. 22 at 7.)

Clark filed an amended complaint on August 21, 2018. (ECF No. 23.) The only material change in the amended complaint is the substitution of an equal protection claim for the due process claim that the court dismissed. On September 17, 2018, the defendants moved to dismiss Clark's amended complaint, again for failure to state a claim. (ECF No. 27.) The defendants' motion has been fully briefed and is ready for resolution. All parties have consented to the full jurisdiction of a magistrate judge. (ECF Nos. 8, 16.)

**FACTS**

The following facts are taken from the amended complaint.

Clark is a licensed medical doctor. (ECF No. 23, ¶ 7.) Defendant Milwaukee County Behavioral Health Division (BHD) is an independent division of defendant Milwaukee County. (*Id.*, ¶ 9.) Defendant Lora Dooley is the Director of Medical Staff Services at BHD. (*Id.*, ¶ 10.)

Clark began working for BHD in 2004 and continued to work there on and off through 2016. (ECF No. 23, ¶¶ 11-12.) In April 2016 Clark "entered into a contract with LT Medical, LLC to provide medical services as an independent contractor for and on behalf of" BHD. (*Id.*, ¶ 13.) Clark worked in this capacity from May 2016 through September 1, 2017. (*Id.*, ¶¶ 13-20, 31.)

In July 2017 Clark advised Dr. John Schneider, the Medical Director at BHD, and Dooley that he had accepted a position in Arizona. (ECF No. 23, ¶ 25.) BHD was aware that Clark's last day of employment would be September 1, 2017. (*Id.*, ¶ 26.)

On September 1, 2017, Clark "voluntarily resigned from his position with the BHD and voluntarily surrendered his medical privileges." (ECF No. 23, ¶ 31.) On September 6, 2017, Dooley, acting on behalf of BHD, entered a report in the National Practitioner Data Bank reporting that Clark voluntarily surrendered clinical privileges while under, or to avoid, investigation relating to professional competence or conduct. (*Id.*, ¶ 35; *see* 42 U.S.C. § 11133(a)(1)(B).) "The [National Practitioner Data Bank] report asserts that the Privileging Review Committee received a complaint dated August 24, 2017 and Review and discussion was scheduled to take place on September 6, 2017." (ECF No. 23, ¶ 36.) Clark was never notified of the August 24, 2017 complaint, the scheduled review, or that he was under investigation at any time prior to the National Practitioner Data Bank entry on September 6, 2017. (*Id.*, ¶¶ 33, 38-39.)

Clark "has experienced difficulty and delay in finding employment as a doctor as a result of the BHD's report to the [National Practitioner Data Bank]." (ECF No. 23, ¶ 46.) The difficulty and delay "in finding employment has caused him great financial harm and will continue to do so for the remainder of his work life." (*Id.*, ¶ 50.)

The only count in the amended complaint that is based on federal law is Count One, entitled "Equal Protection." All remaining counts allege causes of action based on state law.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The court accepts "all well-pleaded facts as true and constru[es] all inferences in favor of the plaintiff[]." *Gruber v. Creditors' Prot. Serv.*, 742 F.3d 271, 274 (7th Cir. 2014).

## ANALYSIS

### I. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall … deny to any persons within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It "most typically reaches state action that treats a person poorly because of the person's race or other suspect classification, such as sex, national origin,

4

religion, political affiliation, among others, or because the person has exercised a 'fundamental right,' or because the person is a member of a group that is the target of irrational government discrimination." *Abcarian v. McDonald*, 617 F.3d 931, 938 (7th Cir. 2010).

However, the Supreme Court has also recognized that the "Equal Protection Clause gives rise to a cause of action on behalf of a 'class of one' where the plaintiff [does] not allege membership in a class or group." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). "To prevail on a class-of-one equal protection theory, 'a plaintiff must allege that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Cannici v. Village of Melrose Park*, 885 F.3d 476, 480 (7th Cir. 2018) (quoting *Forgue v. City of Chicago*, 873 F.3d 962, 968 (7th Cir. 2017) (internal citation and quotations omitted)). Clark's amended complaint does not allege membership in a class or group. Therefore, he is necessarily making a class-of-one equal protection claim.

Clark's class-of-one equal protection claim contests the defendants' assertion that he was "under investigation" on September 1, 2017, when he voluntarily resigned from BHD and surrendered his medical privileges. He alleges that "the defendants knew that a report to the [National Practitioner Data Bank] was not warranted under the circumstances because [he] was not under investigation as a matter of law." (ECF No. 23, ¶ 78.) He contends that "the defendants have not made a report to the [National

Practitioner Data Bank] against other doctors under similar circumstances." (*Id.*, ¶ 80.) The amended complaint does not identify those "other doctors" or the "similar circumstances."

In moving for dismissal, defendants argue that Clark's class-of-one equal protection claim "fails because the United States Supreme Court has limited the scope of class-of-one equal protection claims, he has not identified a comparator who was treated differently under similar circumstances, and defendants' actions had a rational basis." (ECF No. 28 at 3-4.)

In *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 598 (2008), the Supreme Court held that "the class-of-one theory of equal protection does not apply in the public employment context." Defendants argue that "*Engquist* appears to weigh heavily against, if not foreclose, [Clark's] class-of-one claim[.]" (ECF No. 28 at 5.) In response, Clark argues that "*Engquist*'s bar on class-of-one claims concerning discretionary decision making in the public employment context cannot be extended to post-employment, non-discretionary, statutorily prohibited actions concerning licensing and regulation." (ECF No. 32 at 8.)

*Engquist* states:

> There are some forms of state action … which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion

6

granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

553 U.S. at 603. The Court found that "[t]his principle applies most clearly in the employment context, for employment decisions are quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify." *Id.* at 604. The Court stated further:

> the class-of-one theory of equal protection—which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review—is simply a poor fit in the public employment context. To treat employees differently is not to classify them in a way that raises equal protection concerns. Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship. A challenge that one has been treated individually in this context, instead of like everyone else, is a challenge to the underlying nature of the government action.

*Id.* at 605.

*Engquist* went on to explain that there are practical problems with class-of-one equal protection claims when the government acts as an employer:

> In concluding that the class-of-one theory of equal protection has no application in the public employment context—and that is all we decide— we are guided, as in the past, by the "common-sense realization that government offices could not function if every employment decision became a constitutional matter." [*Connick v. Myers*, 461 U.S. 138, 143 (1983)]. If, as Engquist suggests, plaintiffs need not claim discrimination on the basis of membership in some class or group, but rather may argue only that they were treated by their employers worse than other employees similarly situated, any personnel action in which a wronged employee can conjure up a claim of differential treatment will suddenly become the basis of a federal constitutional claim. Indeed, an allegation of arbitrary differential treatment could be made in nearly every instance of an assertedly wrongful

employment action—not only hiring and firing decisions, but any personnel action, such as promotion, salary, or work assignments—on the theory that other employees were not treated wrongfully. [*See Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 995 (9th Cir. 2007)].

553 U.S. at 607-08. The Court found that

[t]he practical problem with allowing class-of-one claims to go forward in this context is not that it will be too easy for plaintiffs to prevail, but that governments will be forced to defend a multitude of such claims in the first place, and courts will be obliged to sort through them in a search for the proverbial needle in a haystack. The Equal Protection Clause does not require "[t]his displacement of managerial discretion by judicial supervision." [*Garcetti v. Ceballos*, 547 U.S. 410, 423 (2006)].

*Id.* at 608-09. The Court concluded that

ratifying a class-of-one theory of equal protection in the context of public employment would impermissibly "constitutionalize the employee grievance." [*Connick*, 461 U.S. at 154]. "The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies." [*Bishop v. Wood*, 426 U.S. 341, 349 (1976)]. Public employees typically have a variety of protections from just the sort of personnel actions about which Engquist complains, but the Equal Protection Clause is not one of them.

*Id.* at 609.

The Court of Appeals for the Seventh Circuit has emphasized that "context matters" in assessing the reach of *Engquist*'s limitations on viable class-of-one scenarios. *Hanes v. Zurick*, 578 F.3d 491, 495 (7th Cir. 2009). The Seventh Circuit has interpreted *Engquist*'s holding to reach "'disputes related to a public employee's interactions with superiors or co-workers.'" *Forgue*, 873 F.3d at 969 (quoting *Avila v. Pappas*, 591 F.3d 552, 554 (7th Cir. 2010)). The Seventh Circuit has also "interpreted *Engquist* to stand for the

broad proposition that inherently subjective discretionary governmental decisions may be immune from class of one claims." *Abcarian*, 617 F.3d at 939.

Having said all of that, Clark was not an employee of BHD; he was an independent contractor. (*See* ECF No. 23, ¶ 13.) Thus, a preliminary issue is whether *Engquist*'s limitation on cognizable class-of-one equal protection claims in the public employee context applies to Clark as an independent contractor. The parties do not address this issue in their briefs.

The Supreme Court and the Seventh Circuit have not directly addressed this issue, but the District Court for the Northern District of Illinois has concluded "that *Engquist* applies to state-contractor relationships for the same reason that it applies to state-employee relationships." *Intralot, Inc. v. McCaffrey*, 11-CV-08046, 2012 WL 4361451, at *4 (N.D. Ill. September 21, 2012). The *Intralot* court was persuaded by the Court of Appeals for the Eleventh Circuit, which "had little trouble applying the reasoning in *Engquist*, directed at a [sic] the government-employee relationship, to the circumstances … involving a government-contractor relationship." *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1274 (11th Cir. 2008). The Eleventh Circuit explained:

> In *Board of County Commissioners v. Umbehr*, 518 U.S. 668, 116 S. Ct. 2342, 135 L. Ed. 2d 843 (1996), the [Supreme] Court addressed whether independent contractors may bring a § 1983 retaliation claim when a government entity has acted against the contractor's exercise of free speech. *Id.* at 671-73, 116 S. Ct. at 2345-46. Having never addressed the issue in the independent contractor context, the Court applied its government employment precedents to the question. *Id.* at 673-74, 116 S. Ct. at 2346-47. It did so because of the *"obvious" similarities between government employees and*

9

> *government contractors* with respect to the issue. *Id.* at 674, 116 S. Ct. at 2347. Specifically, the Court explained that "[t]he government needs to be free to terminate both employees and contractors for poor performance, to improve the efficiency, efficacy, and responsiveness of service to the public, and to prevent the appearance of corruption." *Id.* at 674, 116 S. Ct. at 2347. The Court further articulated that "absent contractual, statutory, or constitutional restriction, the government is entitled to terminate [employees and contractors] for no reason at all." *Id.*
>
> Just as in the employee context, and in the absence of a restricting contract or statute, decisions involving government contracts require broad discretion that may rest "on a wide array of factors that are difficult to articulate and quantify." *Engquist*, 128 S. Ct. at 2154. We hold, therefore, that *Engquist* controls this case and makes clear that [the independent-contractor plaintiff] failed to assert a cognizable right to equal protection.

*Id.* (emphasis added).

Similarly, the Court of Appeals for the Tenth Circuit has found that "[i]n light of *Umbehr* and *Douglas*, a relatively strong case can be made that we should follow suit and extend *Engquist* to cases involving claims asserted by government contractors, unless, of course, there is some unique aspect of the case that would take it outside this general rule." *Planned Parenthood Assoc. of Utah v. Herbert*, 828 F.3d 1245, 1256 (10th Cir. 2016); *see SECSYS, LLC v. Vigil*, 666 F.3d 678, 690 (10th Cir. 2012) (observing that "it is arguably just a small step" from *Engquist*'s conclusion that the class-of-one doctrine does not apply in situations in which the government acts as an employer "to the conclusion [that] the doctrine shouldn't apply when the government interacts with independent contractors—in both circumstances, the government acts in a more proprietorial and less regulatory capacity").

Clark had an employee-like relationship with BHD. The amended complaint alleges that Clark provided medical services "for and on behalf" of BHD and "resigned from his position with the BHD." (ECF No. 23, ¶¶ 13, 31.) And, in opposing the motion to dismiss, Clark alleges that the defendants' decision to enter a report in the National Practitioner Data Bank occurred "after [his] employment relationship ended." (ECF No. 32 at 7.) In this employee-like context, the government has broad discretion to consider varied and individualized factors in making a number of personnel decisions relating to independent contractors, including hiring, disciplining, assigning work, and terminating them. The rationale set forth in *Engquist* for not allowing public employees to bring class-of-one equal protection claims against their governmental employers applies just as much to independent contractors providing services for the government. "'The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies.'" *Engquist*, 553 U.S. at 609 (quoting *Bishop*, 426 U.S. at 349).

As for Clark's argument that *Engquist* does not bar his class-of-one claim because the defendants' decision to file a report with the National Practitioner Data Bank occurred *after* his employment relationship ended, Clark cites no authority stating that the timing of the report affects the analysis. BHD's report to the National Practitioner Data Bank still arose out of the "public employment-like" relationship.

Clark also argues that *Engquist* does not bar his claim because "the report that the defendants filed with the [National Practitioner Data Bank] was directly related to the government's power to regulate or license" as opposed to its power as an employer. (ECF No. 32 at 7-8.) Clark relies on the language in *Engquist* which states that "there is a crucial difference, with respect to constitutional analysis, between the government exercising 'the power to regulate or license, as lawmaker,' and the government acting 'as proprietor, to manage [its] internal operation.'" 553 U.S. at 598 (quoting *Cafeteria & Rest. Workers v. McElroy*, 367 U.S. 886, 896 (1961)) (alteration in original).

However, the defendants did not exercise the state's regulatory or licensing power in entering the report in the National Practitioner Data Bank. The Health Care Quality Improvement Act of 1986 compels all health care entities—public and private—to enter a report when they accept the surrender of clinical privileges of a physician while the physician is under investigation relating to possible incompetence or improper professional conduct. *See* 42 U.S.C. § 11133(a)(1)(B); 42 U.S.C. § 11151(4)(A). A public health care entity has the same obligation as a private health care entity in "managing its internal operation" to enter reports in the National Practitioner Data Bank. BHD was acting as an employer, and not as a lawmaker exercising the state's power to regulate or license, when it entered the report.

Clark further argues that *Engquist* does not extend to non-discretionary actions. (ECF No. 32 at 7-8.) Although it's unclear what action BHD took that Clark alleges was

12

non-discretionary, he presumably is referring to the decision to enter a report in the National Practitioner Data Bank stating that Clark was under investigation at the time he resigned from BHD. Of course, to the extent BHD was *required* to enter the report, it cannot be charged with violating Clark's equal protection rights by treating him differently than others. *See Abcarian*, 617 F.3d at 939 ("But when the law gives a state actor *no* discretion, it is hard to see how a person can claim irrational discrimination when the law is applied to him.").

Moreover, the holding in *Engquist* was not limited to discretionary actions. The Seventh Circuit has made clear that, "[u]nder *Engquist*, the prohibition on class-of-one claims in the public employment context is *categorical*." *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012) (emphasis added); *cf. Alford v. Consol. Gov't of Columbus*, 438 Fed. Appx. 837, 840 (11th Cir. 2011) ("*Engquist* holds that class-of-one equal protection claims are *categorically* prohibited in the public employment context.") (emphasis added). As discussed above, Clark's class-of-one equal protection claim arises in a context sufficiently analogous to the public employment context so as to be categorically barred.

Accordingly, the court finds that Clark has failed to allege a cognizable class-of-one equal protection claim. The defendants' motion to dismiss Count One (equal protection) of Clark's amended complaint will be granted.

## II. State Law Claims

Although the court has determined that Clark's equal protection claim must be dismissed, he argues that his state law claims present a question of federal law "sufficiently substantial to justify invocation of [this court's] federal-question subject matter jurisdiction." (ECF No. 32 at 7.)

Clark invokes this court's jurisdiction pursuant to 28 U.S.C. § 1331, which grants district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." (ECF No. 23, ¶ 1.) A case may arise under federal law in two ways. *Gunn v. Minton*, 568 U.S. 251, 257 (2013). "Most directly, a case arises under federal law when federal law creates the cause of action asserted." *Id.* However, "even where a claim finds its origins in state rather than federal law," the Supreme Court has "identified a 'special and small category' of cases in which arising under jurisdiction still lies." *Id.* at 258 (quoting *Empire Healthchoice Assur. Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)).

The Supreme Court has outlined four factors that must be present for a case to fall within this slim, second category of cases: "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. "Where all four of these requirements are met, … jurisdiction is proper because there is a 'serious federal interest in claiming the

advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Id.* (quoting *Grable*, 545 U.S. at 313-314). "This inquiry *rarely* results in a finding of federal jurisdiction." *Evergreen Square of Cudahy v. Wisconsin Hous. and Econ. Dev. Auth.*, 776 F.3d 463, 466 (7th Cir. 2015) (emphasis added).

Clark argues that his state law claims present a question of federal law because "[t]he answer to whether [he] was under investigation rests entirely on an interpretation of the term 'investigation' under 42 U.S.C. § 11133(a)(1)(B) that does not appear to have been addressed in this circuit." (ECF No. 32 at 6.) However, whether Clark was "under investigation" does not rest on a court's interpretation of the term "investigation," which is unambiguous. *See Doe v. Rogers*, 139 F. Supp. 3d 120, 137 (D.D.C. 2015) ("The term 'investigation' is ordinarily understood to mean a systematic examination."). Clark has not offered a definition of "investigation" alternative to the ordinary definition of the term. In fact, even Clark admits that whether he was "under investigation" is a question of fact rather than a question of law. (*See* ECF No. 32 at 13 ("The question of whether Dr. Clark was under investigation depends on a disputed set of facts[.]").)

Because an interpretation of the term "investigation" is not an essential element of any of Clark's state law claims, a federal question is not "necessarily raised" by those claims. *See Peebles v. Chi. State Univ.*, No. 15-C-2547, 2015 WL 2006434, at *3 (N.D. Ill. May 1, 2015) ("A federal question is not 'necessarily raised' when a federal issue is not an

essential element of a plaintiff's state-law claim[s]."). Count Two (breach of contract) of Clark's amended complaint turns on whether "BHD failed to follow its policies and procedures as outlined and described in the Milwaukee County Bylaws." (ECF No. 23, ¶ 85.) Count Three (breach of implied contract and duty of good faith and fair dealing) alleges that BHD failed "to provide Dr. Clark with notice and advise him of any actions that the BHD believed failed to meet a reasonable standard of care" and that it "made the report to the [National Practitioner Data Bank] with malice, without privilege, and knowing it was false, or with reckless disregard as to its truth or falsity." (*Id.*, ¶¶ 90-99.) Count Four (negligence) turns on whether "the manner and substance of the reporting of the actions taken against Dr. Clark by the Defendants departed from standards of the profession, as defined by the profession and the BHD's employee handbook, Bylaws, Rules and Regulations." (*Id.*, ¶ 105.) And Count Five (interference with business relationship and expectation) turns on whether "[t]he conduct of the BHD … as described in this action constitutes intentional and unjustified acts of interference with valid business relationships and expectations that the Defendants knew existed between Dr. Clark and his prospective employers." (*Id.*, ¶ 108.)

As such, the court finds that Clark's state law claims fail to raise a federal question which would invoke this court's jurisdiction pursuant to 28 U.S.C. § 1331. The court declines to exercise supplemental jurisdiction over Clark's state law claims and dismisses them without prejudice. *See* 28 U.S.C. § 1367(c)(3).

### III. Remaining Claims

Having concluded that Clark's federal and state law claims will be dismissed, the court must also dismiss Count Six (punitive damages) and Count Seven (declaratory and injunctive relief) of the amended complaint. (ECF No. 23, ¶¶ 110-112.) Count Six must be dismissed because punitive damages are a type of remedy, not a separate cause of action. S*ee Estate of Bain v. Transamerica Life Ins. Co.*, No. 18-C-311, 2018 WL 3328005, at *4 (E.D. Wis. July 6, 2018). And Count Seven must be dismissed because the Declaratory Judgment Act, 28 U.S.C. § 2201, is not an independent source of federal subject matter jurisdiction. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 935 (7th Cir. 2008).

**IT IS THEREFORE ORDERED** that the defendants' motion to dismiss (ECF No. 27) is **granted** and this action is **dismissed**. Count One of Clark's amended complaint is dismissed with prejudice, while Counts Two, Three, Four, Five, Six, and Seven are dismissed without prejudice. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 11th day of December, 2018.

WILLIAM E. DUFFIN
U.S. Magistrate Judge